UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAKE CHARLES DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL NO. 2:26-CR-044-01 |
| VERSUS | JUDGE JAMES D. CAIN, JR. |
| ALEX TAYLOR FONTENOT (01) | MAGISTRATE JUDGE LEBLANC |

# MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS THE INDICTMENT

[Page intentionally left blank]

# TABLE OF CONTENTS


I. INTRODUCTION ........ 1

II. BACKGROUND ........ 3

III. THE INDICTMENT SHOULD BE DISMISSED BECAUSE THE CHARGED PHRASE IS PROTECTED POLITICAL SPEECH UNDER THE FIRST AMENDMENT, NOT A TRUE THREAT ........ 4

- A. The true-threat category reaches only a serious expression of an intent to commit unlawful violence against a particular individual or group, and political hyperbole is not within it ........ 6
- B. *Watts* establishes that the language of the political arena is often vituperative, abusive, and inexact, and that such language is protected ........ 7
- C. The charged phrasing fails the objective inquiry because it describes no unlawful violence, identifies no one, and reaches no one ........ 9

IV. THE INDICTMENT SHOULD BE DISMISSED FOR FAILURE TO STATE AN OFFENSE ........ 14

- A. This case can properly be decided under Rule 12(b)(3)(B) ........ 14
- B. The charged sentence is not a true threat on the face of the indictment ........ 18
- C. The indictment does not allege a threat directed to a particular individual or group of individuals ........ 20
- D. Section 875(c) requires the government to identify the person of another, and the indictment identifies none ........ 23

V. CONCLUSION ........ 25

CERTIFICATE OF SERVICE ........ 25

# TABLE OF AUTHORITIES

## CASES

*Bailey v. Iles*, 87 F.4th 275 (5th Cir. 2023) .......... 13

*Borden v. United States*, 593 U.S. 420 (2021) .......... 24

*Bose Corp. v. Consumers Union of United States, Inc.*, 466 U.S. 485 (1984) .......... 5

*Brandenburg v. Ohio*, 395 U.S. 444 (1969) .......... 8-9

*City of Houston v. Hill*, 482 U.S. 451 (1987) .......... 9

*Counterman v. Colorado*, 600 U.S. 66 (2023) .......... 6, 24

*District of Columbia v. Heller*, 554 U.S. 570 (2008) .......... 11

*Elonis v. United States*, 575 U.S. 723 (2015) .......... 7, 24

*Hamling v. United States*, 418 U.S. 87 (1974) .......... 14

*NAACP v. Claiborne Hardware Co.*, 458 U.S. 886 (1982) .......... 5, 8-9

*New York Times Co. v. Sullivan*, 376 U.S. 254 (1964) .......... 5

*Payton v. New York*, 445 U.S. 573 (1980) .......... 10-11

*Rankin v. McPherson*, 483 U.S. 378 (1987) .......... 5, 9

*Russell v. United States*, 369 U.S. 749 (1962) .......... 14

*Shadwick v. City of Tampa*, 407 U.S. 345 (1972) .......... 11

*United States v. Alaboud*, 347 F.3d 1293 (11th Cir. 2003) .......... 12-13

*United States v. Alkhabaz*, 104 F.3d 1492 (6th Cir. 1997) .......... 16-17

*United States v. Bozeman*, 495 F.2d 508 (5th Cir. 1974) .......... 6

*United States v. Burger*, 170 F.4th 395 (5th Cir. 2026) .......... 17-18

*United States v. Christenson*, 653 F.3d 697 (8th Cir. 2011) .......... 19

*United States v. Cook*, 472 F. Supp. 3d 326 (N.D. Miss. 2020) .......... 9-10

*United States v. Cox*, 957 F.2d 264 (6th Cir. 1992) .......... 24

*United States v. Crews*, 781 F.2d 826 (10th Cir. 1986) .......... 7

*United States v. Cruikshank*, 92 U.S. 542 (1875) ........ 14

*United States v. Daulong*, 60 F. Supp. 235 (W.D. La. 1945) ........ 16

*United States v. Demeo*, No. 2:26-cr-24-SPC-DNF, 2026 WL 1077630 (M.D. Fla. Apr. 21, 2026) ........ 20

*United States v. Flores*, 404 F.3d 320 (5th Cir. 2005) ........ 14, 18

*United States v. Fontenot*, 665 F.3d 640 (5th Cir. 2011) ........ 15

*United States v. Howell*, 719 F.2d 1258 (5th Cir. 1983) ........ 12

*United States v. Huet*, 665 F.3d 588 (3d Cir. 2012) ........ 16

*United States v. Joudeh*, No. 6:25-cr-290-CEM-DCI, 2026 WL 2234671 (M.D. Fla. Aug. 1, 2026) ........ 2, 12, 19-21

*United States v. Jubert*, 139 F.4th 484 (5th Cir. 2025) ........ 6, 13, 22-23

*United States v. Kelner*, 534 F.2d 1020 (2d Cir. 1976) ........ 7

*United States v. Khan*, 937 F.3d 1042 (7th Cir. 2019) ........ 24

*United States v. Landham*, 251 F.3d 1072 (6th Cir. 2001) ........ 13, 16-17

*United States v. Mann*, 517 F.2d 259 (5th Cir. 1975) ........ 15, 17

*United States v. Myers*, 104 F.3d 76 (5th Cir. 1997) ........ 6, 13

*United States v. Nformangum*, No. 24-20515, 2026 WL 18900 (5th Cir. Jan. 2, 2026) ........ 2, 10, 22-23

*United States v. O'Dwyer*, 443 F. App'x 18 (5th Cir. 2011) ........ 2, 16, 18-19, 21-22

*United States v. Panarella*, 277 F.3d 678 (3d Cir. 2002) ........ 15, 23

*United States v. Ratcliff*, 488 F.3d 639 (5th Cir. 2007) ........ 15

*United States v. Schneider*, 910 F.2d 1569 (7th Cir. 1990) ........ 12

*United States v. Stock*, 728 F.3d 287 (3d Cir. 2013) ........ 15-16, 19

*Virginia v. Black*, 538 U.S. 343 (2003) ........ 2, 6, 11, 20

*Watts v. United States*, 394 U.S. 705 (1969) ........ 5, 7-8, 10, 13

### Constitutional provisions

U.S. CONST. amend. I ........ 1, 4-5, 9, 13-14

U.S. CONST. amend. II ........ 11

U.S. CONST. amend. IV ........ 10-11

### Statutes

18 U.S.C. § 871(a) ........ 9

18 U.S.C. § 875(c) ........ *passim*

La. R.S. 14:19(A)(1)(b)(i) ........ 11

La. R.S. 14:20(A)(4)(a) ........ 11

La. R.S. 14:20(C) ........ 11

### Rules

FED. R. CRIM. P. 12 ........ 17

FED. R. CRIM. P. 12(b)(1) ........ 1, 4, 14

FED. R. CRIM. P. 12(b)(3)(B) ........ 14-15

FED. R. CRIM. P. 12(b)(3)(B)(v) ........ 1, 14

**UNITED STATES DISTRICT COURT**

**WESTERN DISTRICT OF LOUISIANA**

**LAKE CHARLES DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **CRIMINAL NO. 2:26-CR-044-01** |
| **VERSUS** | **JUDGE JAMES D. CAIN, JR.** |
| **ALEX TAYLOR FONTENOT (01)** | **MAGISTRATE JUDGE LEBLANC** |

NOW INTO COURT, through the undersigned counsel, comes Defendant Alex Taylor Fontenot, who respectfully submits this memorandum in support of her motion to dismiss the indictment under the First Amendment to the United States Constitution and Rules 12(b)(1) and 12(b)(3)(B)(v) of the Federal Rules of Criminal Procedure.

## I. INTRODUCTION

The grand jury charged Alex Taylor Fontenot with a single count of transmitting a threat under 18 U.S.C. § 875(c), and it rested that count on a single sentence from a video posted to her social media on January 25, 2026: "[i]f you step foot onto my house, you're leaving in a body bag." Doc. 15 at 1. Read as the grand jury wrote it, the sentence is conditional. It promises harm to no one who stays out of Ms. Fontenot's home. It names no person, fixes no place beyond her own front door, sets no time, and identifies no weapon. The one circumstance that would bring about the harm it describes is an unlawful entry into a private dwelling.

On the plain text of the indictment, two independent grounds require dismissal. First, the charged phrase is protected political speech. It was broadcast to

the public, it addresses a federal agency (ICE) at the center of an intense national controversy, and it says only that a person who forces his way into Ms. Fontenot's home may meet resistance there. Whether speech of that kind is protected is a question of constitutional law for this Court. Second, the indictment fails to state an offense. Section 875(c) reaches a threat "to injure the person of another," and the true-threat doctrine reaches only a serious expression of an intent to commit "an act of unlawful violence to a particular individual or group of individuals." *Virginia v. Black*, 538 U.S. 343, 359 (2003). The indictment supplies a category and a quotation and nothing else.

The Fifth Circuit has addressed closely similar facts. In *O'Dwyer* it affirmed the pretrial dismissal of a Section 875(c) indictment because the charged statement was "hypothetical and conditional" and "did not threaten bodily harm to any particular individual." *United States v. O'Dwyer*, 443 F. App'x 18, 20 (5th Cir. 2011) (unpublished). In *Nformangum* it sustained a conviction on the other side of that line, because the statement there "was specific and was neither hypothetical nor conditional." *United States v. Nformangum*, No. 24-20515, 2026 WL 18900, at *3 n.3 (5th Cir. Jan. 2, 2026) (unpublished). The sentence charged here is hypothetical and conditional, as *O'Dwyer*'s was. Recently, another district court applied *O'Dwyer* and dismissed a Section 875(c) indictment that quoted a single online comment and pleaded no context around it. *See United States v. Joudeh*, No. 6:25-cr-290-CEM-DCI, 2026 WL 2234671, at *1, *5 (M.D. Fla. Aug. 1, 2026). This indictment pleads no more

than that one did.

## II. Background

On January 25, 2026, Ms. Fontenot posted a short video to an Instagram account. Based on the video, a criminal complaint issued on January 30, 2026, supported by the affidavit of Special Agent Hamilton Hicks. Complaint, Doc. 1; Affidavit in Support of Criminal Complaint, Doc. 1-1 at 1, 6. The complaint affidavit records six statements from the video. In the order the affidavit sets them out, they are:

> Hey ICE guess what? This message is for you.
>
> Don't come in my house if you're planning on leaving alive.
>
> If you step foot on to my house, you're leaving in a body bag.
>
> I've been waiting for the day that I get to pew-pew a tyrannical government uprising.
>
> You'll be dropped like flies, immediately, so you won't feel a thing.
>
> So, ICE if you walk into my house count your fucking days because you're turning into my hobby.

Affidavit in Support of Criminal Complaint, Doc. 1-1 at 4-5.

These statements are expressly conditioned on immigration officers entering Ms. Fontenot's home, and the "body bag" and "dropped like flies" imagery is tied to those acts of entry. One statement, that Ms. Fontenot has "been waiting for the day that I get to pew-pew a tyrannical government uprising," is not directed at any person at all; it is political hyperbole, cast in the register of a popular uprising against a

government the speaker calls tyrannical.

The post's framing confirms the same character. The video is titled "Don't come to my door expecting to leave freely," and it carries the hashtags #fuckice, #abolishice, #tyranicalgovernment, #revoution2026, and #impeachtrump (as posted). Affidavit in Support of Criminal Complaint, Doc. 1-1 at 5. To abolish an agency, to impeach a President, and to call for a revolution are demands for institutional and electoral change.

The grand jury returned this one-count indictment on February 4, 2026. Doc. 15. The indictment, unlike the complaint affidavit, quotes only one sentence, the third in the sequence above, and it renders that sentence "[i]f you step foot onto my house, you're leaving in a body bag." Doc. 15 at 1. It identifies the person threatened not as an individual but as a category, "Immigrations and Customs Enforcement agents," and alleges that Ms. Fontenot acted "with the intent to communicate a threat and with the knowledge that it would be viewed as a threat." Doc. 15 at 1. No agent is named, and no office, city, roster, or number appears anywhere in the complaint or the indictment.

## III. THE INDICTMENT SHOULD BE DISMISSED BECAUSE THE CHARGED PHRASE IS PROTECTED POLITICAL SPEECH UNDER THE FIRST AMENDMENT, NOT A TRUE THREAT

A party may raise by pretrial motion any defense that the court can determine without a trial on the merits. FED. R. CRIM. P. 12(b)(1). A First Amendment challenge to the words a threat count quotes is such a defense, because it presents a question

of law. Whether a communication is a true threat or protected expression is, in the first instance, a question of constitutional law for the Court. In *Watts* the Supreme Court construed a threat statute "with the commands of the First Amendment clearly in mind," held the statement to be protected "political hyperbole," and directed the entry of a judgment of acquittal rather than remanding to a jury. *Watts v. United States*, 394 U.S. 705, 707-08 (1969).

The rule of independent review makes that allocation a constitutional one. When the question is whether a particular communication falls within an unprotected category, judges bear "a constitutional responsibility that cannot be delegated to the trier of fact." *Bose Corp. v. Consumers Union of United States, Inc.*, 466 U.S. 485, 501 (1984). Whether speech is protected is "a question of law." *Rankin v. McPherson*, 483 U.S. 378, 386 n.9 (1987). And because this charge rests on speech about a federal agency, the Court must "approach this suggested basis of liability with extreme care," *NAACP v. Claiborne Hardware Co.*, 458 U.S. 886, 926-27 (1982), for expression on public issues "has always rested on the highest rung of the hierarchy of First Amendment values," *id.* at 913. This country's "profound national commitment" to uninhibited debate on public issues may well include "vehement, caustic, and sometimes unpleasantly sharp attacks on government and public officials." *Watts*, 394 U.S. at 708 (quoting *New York Times Co. v. Sullivan*, 376 U.S. 254, 270 (1964)).

### A. The true-threat category reaches only a serious expression of an intent to commit unlawful violence against a particular individual or group, and political hyperbole is not within it

Section 875(c) makes it a crime to transmit in interstate or foreign commerce "any communication containing any threat to kidnap any person or any threat to injure the person of another." 18 U.S.C. § 875(c). The statute does not define a threat, but the Supreme Court has. True threats "encompass those statements where the speaker means to communicate a serious expression of an intent to commit an act of unlawful violence to a particular individual or group of individuals." *Black*, 538 U.S. at 359. The word "true" in the phrase "distinguishes what is at issue from jests, 'hyperbole,' or other statements that when taken in context do not convey a real possibility that violence will follow." *Counterman v. Colorado*, 600 U.S. 66, 74 (2023). Two features of that definition decide this case: the violence must be "*unlawful* violence," and its object must be "a particular individual or group of individuals." *Black*, 538 U.S. at 359 (emphasis added). The charged sentence supplies neither.

The Fifth Circuit's inquiry for "true threats" asks two questions: "whether a reasonable person would perceive the statement as threatening, and whether the speaker was subjectively aware of its threatening nature." *United States v. Jubert*, 139 F.4th 484, 490-91 (5th Cir. 2025). A communication is a threat only if "in its context [it] would have a reasonable tendency to create apprehension that its originator will act according to its tenor." *United States v. Myers*, 104 F.3d 76, 79 (5th Cir. 1997) (quoting *United States v. Bozeman*, 495 F.2d 508, 510 (5th Cir. 1974)),

abrogated in part on other grounds by *Elonis v. United States*, 575 U.S. 723 (2015). The tenor of this sentence is that Ms. Fontenot will do nothing at all unless the reader unlawfully enters her home.

The unprotected category is narrow. The purpose and effect of the *Watts* limitation "is to insure that only unequivocal, unconditional and specific expressions of intention immediately to inflict injury may be punished. . . ." *United States v. Kelner*, 534 F.2d 1020, 1027 (2d Cir. 1976). A statement qualifies only where it "convey[s] a gravity of purpose and likelihood of execution so as to constitute speech beyond the pale of protected 'vehement, caustic . . . unpleasantly sharp attacks on government and public officials.'" *United States v. Crews*, 781 F.2d 826, 832 (10th Cir. 1986) (quoting *Kelner*, 534 F.2d at 1026).

The threat question is also antecedent to the mental state, which matters here because the indictment pleads a mental state. *Watts* reversed on the ground that "whatever the 'willfullness' requirement implies, the statute initially requires the Government to prove a true 'threat.'" 394 U.S. at 708. The indictment's recitation of that mental state, Doc. 15 at 1, therefore answers nothing. A speaker cannot intend to communicate a threat by uttering words that are not one. *See Elonis*, 575 U.S. at 737-38.

### B. *Watts* establishes that the language of the political arena is often vituperative, abusive, and inexact, and that such language is protected

At a public rally in Washington in 1966, an eighteen-year-old who had just received a 1-A draft classification told a discussion group that "[i]f they ever make me

carry a rifle the first man I want to get in my sights is L.B.J." *Watts*, 394 U.S. at 706. The Supreme Court reversed his conviction, holding the statement to be "political hyperbole" rather than a true threat, and it rested on "the expressly conditional nature of the statement and the reaction of the listeners." *Id.* at 708. "The language of the political arena, like the language used in labor disputes, is often vituperative, abusive, and inexact." *Id.* (citation omitted).

The indicted sentence from Ms. Fontenot's post is further from a threat than the statement *Watts* protected, on every axis the Supreme Court considered. The petitioner in *Watts* named the President of the United States; Ms. Fontenot named no one. He placed a man "in my sights" and identified the weapon he would be carrying; Ms. Fontenot identified no weapon (indeed she owns none) and no specific person to aim one at. His condition was one the government itself would bring about by drafting him, so the speaker did not control it and the target could not avoid it; Ms. Fontenot's condition is one the person addressed can decline at no cost by staying out of her house. If the statement in *Watts* was political hyperbole, then this one certainly is.

*Claiborne* is instructive as to a statement that shares three features with this one. Charles Evers told a mass audience during a boycott that "[i]f we catch any of you going in any of them racist stores, we're gonna break your damn neck." *Claiborne*, 458 U.S. at 902. That statement was conditional, it was addressed to an unnamed class rather than to any individual, and it named a specific bodily injury. The

Supreme Court held that "[t]he emotionally charged rhetoric of Charles Evers' speeches did not transcend the bounds of protected speech set forth in *Brandenburg*."[1] *Id.* at 928. Evers's words reached people who did nothing more than shop at a store; the only person this sentence reaches is one who breaks into a home.

The audience the indictment assigns to the sentence places it at the core of the First Amendment. "The freedom of individuals verbally to oppose or challenge police action without thereby risking arrest is one of the principal characteristics by which we distinguish a free nation from a police state." *City of Houston v. Hill*, 482 U.S. 451, 462-63 (1987).

*Rankin* illustrates how much room that principle leaves. On hearing of the attempt on President Reagan's life, a clerical employee said, "If they go for him again, I hope they get him." 483 U.S. at 380. A listener reported her, and she was fired. The Supreme Court agreed with the district court that the statement "did not amount to a threat punishable under 18 U.S.C. § 871(a) . . . or, indeed, that could properly be criminalized at all." *Id.* at 386-87.

### C. The charged phrasing fails the objective inquiry because it describes no unlawful violence, identifies no one, and reaches no one

Whether a reasonable person would perceive a statement as threatening turns on its content and specificity, on whether it was communicated to a victim, and on

[1] *Brandenburg v. Ohio*, 395 U.S. 444, 447 (1969), holds that the government may not proscribe advocacy of force or of law violation "except where such advocacy is directed to inciting or producing imminent lawless action and is likely to incite or produce such action." Incitement under *Brandenburg* is a First Amendment exception distinct from the true-threat doctrine, and this motion does not rest on it.

the social and political context in which it was made. *Watts*, 394 U.S. at 707-08; *United States v. Cook*, 472 F. Supp. 3d 326, 334-35 (N.D. Miss. 2020). Those considerations place the charged sentence outside the category.

Begin with what the sentence says. It identifies no ICE agent, by name or photograph, gives no office or address, sets no date, and describes no weapon. It addresses only the hypothetical situation in which an ICE agent unlawfully enters her residence. Nothing about this statement "specifically identified a target," was "specific enough as to place, time or method to take the threat seriously," and "was made directly to the intended target or to a third party." *Cook*, 472 F. Supp. 3d at 334-35. The charged sentence fails each of those measures.

*Nformangum* is not to the contrary. The Fifth Circuit there rejected a no-first-person argument, but it did so because the speaker's other comments "indicated that he was willing to commit the violent acts to which he referred." *Nformangum*, 2026 WL 18900, at *3. Those comments were part of the charged communication. Here the grand jury charged one sentence and left everything else to "among other things." Doc. 15 at 1.

Conditionality is the organizing feature of the sentence, and the condition it states is not an ordinary one. The sentence describes harm to a person only if that person steps foot onto Ms. Fontenot's house. The only way to satisfy it is to enter another person's dwelling without her consent. Absent a warrant, consent, or exigent circumstances, federal officers have no lawful authority to do that. "[T]he Fourth

Amendment has drawn a firm line at the entrance to the house. Absent exigent circumstances, that threshold may not reasonably be crossed without a warrant." *Payton v. New York*, 445 U.S. 573, 590 (1980). The warrant *Payton* requires issues from a judicial officer, because neutrality and detachment "require severance and disengagement from activities of law enforcement." *Shadwick v. City of Tampa*, 407 U.S. 345, 350 (1972). The single condition the sentence states, then, is the one circumstance in which the officers in the category the indictment identifies would be acting outside the law.

That is dispositive. A true threat is a serious expression of an intent to commit "an act of unlawful violence." *Black*, 538 U.S. at 359. Force used by a person inside her own home against someone who has entered it unlawfully is not unlawful violence. Louisiana law says so. A homicide is justifiable when committed by a person lawfully inside a dwelling against one "who is attempting to make an unlawful entry," where deadly force reasonably appears "necessary to prevent the entry or to compel the intruder to leave." La. R.S. 14:20(A)(4)(a); accord La. R.S. 14:19(A)(1)(b)(i). There is no duty to retreat. La. R.S. 14:20(C). The constitutional backdrop points the same way. "[T]he inherent right of self-defense has been central to the Second Amendment right," and the home is "where the need for defense of self, family, and property is most acute." *District of Columbia v. Heller*, 554 U.S. 570, 628 (2008). A statement that the speaker will defend her home against an unlawful entry announces an intention to do what the law permits, and so cannot be a serious expression of an

intent to commit unlawful violence.

The direction of the condition distinguishes the indicted statement from the statements courts have found to be threats. Where the Fifth Circuit has sustained a conditional statement as a threat, the speaker avowed his own intention to act. In *United States v. Howell*, 719 F.2d 1258, 1260 (5th Cir. 1983), the defendant, confined in a state hospital, told a federal agent that "[i]f released, I would make my way to Washington and kill him—I will kill the President," a first-person declaration of what the speaker himself would set out to do, on a condition he did not control and the target could not avoid. The charged sentence declares nothing that Ms. Fontenot will set out to do.

Ms. Fontenot does not contend that a conditional statement can never be a threat. *Schneider* says the opposite: "Most threats are conditional," and "[t]hey are threats nonetheless." *United States v. Schneider*, 910 F.2d 1569, 1570 (7th Cir. 1990). The line *Schneider* draws is between conditions that coerce and conditions that do not. Where a condition has been held to aggravate rather than defeat a threat, the condition was coercive: the speaker demanded that the listener surrender something he was entitled to keep and held violence over him until he did. That is why "'[y]our money or your life' is a threat punishable under the statute . . . ." *Id.* The court in *Joudeh* made the same point when it contrasted *Alaboud*, where the defendant made "graphic promises of violence that would fall upon [the victim] and his law firm if [the victim] did not return the retainer fee." *Joudeh*, 2026 WL 2234671, at *3 (quoting

*United States v. Alaboud*, 347 F.3d 1293, 1297 (11th Cir. 2003)). The sentence listed in the indictment demands nothing. It asks the reader for exactly what the law already requires of him, which is to stay out of a home he has no warrant to enter, and a statement that asks only to be left alone is not an instrument of coercion.

Context also supports dismissal. In this circuit "context is critical." *Bailey v. Iles*, 87 F.4th 275, 285 (5th Cir. 2023). The context the indictment supplies is a video posted "to social media" and addressed to a federal agency. Doc. 15 at 1. It was broadcast to the public rather than delivered to anyone, and no recipient, relationship, prior contact, or history between Ms. Fontenot and any agent is alleged. *Jubert* drew that line in the course of finding a threat, observing that the posts there "were not part of a rally and were not addressed to public officials." 139 F.4th at 491. This communication was addressed to no one else.

Finally, *Watts* rested in part on "the reaction of the listeners," 394 U.S. at 708, and the indictment pleads none. It is "incumbent on the Government to make that context clear in such an indictment. . ." *United States v. Landham*, 251 F.3d 1072, 1080 (6th Cir. 2001). Under the Fifth Circuit's own test, "[i]n order to convict, a factfinder must determine that the recipient of the in-context threat reasonably feared it would be carried out." *Myers*, 104 F.3d at 80. No reasonable listener can be identified on this pleading at all, because the indictment names no recipient and alleges no relationship, no prior contact, and no earlier threat of any kind. The First Amendment requires dismissal.

## IV. THE INDICTMENT SHOULD BE DISMISSED FOR FAILURE TO STATE AN OFFENSE

The two grounds this memorandum presses are distinct. Rule 12(b)(1) supplies the authority to decide a defense before trial. The First Amendment supplies the first ground, *see* Section III, and it is one that no quantity of additional proof can cure, because speech that is protected remains protected whatever else is shown about it. The ground presented in this section is narrower. It accepts every allegation in the indictment as true and asks only whether the facts so alleged fall within Section 875(c).

### A. This case can properly be decided under Rule 12(b)(3)(B)

A defendant may move before trial to dismiss a count that fails to state an offense. FED. R. CRIM. P. 12(b)(3)(B)(v). An indictment is sufficient only if it, first, "contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend," and, second, "enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." *Hamling v. United States*, 418 U.S. 87, 117 (1974). Tracking the words of the statute is not always enough, because where the charge turns on the identification of a fact, "an indictment must do more than simply repeat the language of the criminal statute," *Russell v. United States*, 369 U.S. 749, 764 (1962), and a pleading cast in "generic terms" must "descend to particulars," *United States v. Cruikshank*, 92 U.S. 542, 558 (1875).

Whether the question may be decided before trial "is by-and-large contingent upon whether the infirmity in the prosecution is essentially one of law or involves

determinations of fact," and on a motion of this kind "the court is required to take the allegations of the indictment as true and to determine whether an offense has been stated." *United States v. Fontenot*[2], 665 F.3d 640, 644 (5th Cir. 2011); *see also United States v. Flores*, 404 F.3d 320, 324-25 (5th Cir. 2005). "[A] charging document fails to state an offense if the specific facts alleged in the charging document fall beyond the scope of the relevant criminal statute, as a matter of statutory interpretation," even where the pleading tracks the statute word for word. *United States v. Panarella*, 277 F.3d 678, 685 (3d Cir. 2002). The Fifth Circuit has affirmed a dismissal on precisely that ground. *United States v. Ratcliff*, 488 F.3d 639, 643, 649 (5th Cir. 2007) (reviewing the indictment's sufficiency de novo, "taking the indictment's allegations as true," and affirming dismissal because "the terms of the statute . . . simply do not proscribe the conduct for which [the defendant] was indicted").

The Court's review is confined to the charging document, and that confinement binds both parties. A facially valid indictment "is enough to call for trial of the charge on the merits," *United States v. Mann*, 517 F.2d 259, 267 (5th Cir. 1975), but the four corners of the indictment are also the outer limit of what may sustain it. Reviewing a Section 875(c) indictment under Rule 12(b)(3)(B), the Third Circuit confined its own statement of the facts to the indictment, calling it "similarly circumscribed." *United States v. Stock*, 728 F.3d 287, 290 n.1 (3d Cir. 2013). The indictment in *Stock* followed the same form this one does, alleging that the defendant transmitted "a

---

[2] No relation to the defendant in this case.

communication containing a threat to injure the person of another, that is, the defendant . . . posted a notice on Craig's List . . . that contained the following statements, among others." *Id.* at 290. What distinguished *Stock* was what followed that formula: a first-person narrative of hunting the victim with tow chains and drowning him, on which the Third Circuit found "sufficient context in the indictment" and affirmed the denial of dismissal. *Id.* at 290, 301-02. This indictment quotes one sentence naming no one.

A court "may properly dismiss an indictment as a matter of law if it concludes that no reasonable jury could find that the alleged communication constitutes a threat or a true threat." *Stock*, 728 F.3d at 298 (citing *United States v. Huet*, 665 F.3d 588, 596 (3d Cir. 2012)). The Fifth Circuit asks the same question, whether the court can "determine as a matter of law that no reasonable jury could find the allegedly criminal statement to be a true threat." *O'Dwyer*, 443 F. App'x at 20. Dismissing a threat indictment on the pleaded words is neither novel nor extraordinary, and a judge of this district did it eighty-one years ago. *See United States v. Daulong*, 60 F. Supp. 235, 236 (W.D. La. 1945) (quashing a threat indictment because "there must be the positive expression of intent and purpose, presently or in the future, to do the thing denounced"). A published court of appeals decision has held that a Section 875(c) count should have been dismissed on the pleaded words because "there is simply no communication which 'a reasonable person . . . would take . . . as a serious expression of an intention to inflict bodily harm.'" *Landham*, 251 F.3d at 1082-83

(quoting *United States v. Alkhabaz*, 104 F.3d 1492, 1495 (6th Cir. 1997)).

*Burger* does not stand in the way. It is true that whether a statement is a true threat is "generally a question for the jury," and that there is "no authority under Rule 12 . . . to dismiss on the basis of a sufficiency-of-the-evidence defense which raises factual questions embraced in the general issue." *United States v. Burger*, 170 F.4th 395, 403 (5th Cir. 2026) (quoting *Mann*, 517 F.2d at 267). A court accordingly may not dismiss "on the ground that the allegations are not supported by adequate evidence, for an indictment . . . if valid on its face, is enough to call for trial of the charge on the merits." *Id.* (quoting *Mann*, 517 F.2d at 267). But this motion disputes no fact the government has alleged, weighs no evidence the government intends to offer, and raises no factual question embraced in the general issue. It accepts every allegation in the indictment as true and contends that, so accepted, the charged sentence is not a threat the statute reaches.

*Burger*'s facts show why it reversed, and they are not the facts here. The charged statements in *Burger* were made by a player speaking in character inside an online game, and the case turned on a genuine dispute about how those statements would be understood. Two other players saw them, reported them to the FBI, and, the government represented, would testify at trial. *Id.* at 404. The Fifth Circuit agreed with the government that the district court "improperly resolved disputed questions of fact and did so on an incomplete record," *id.* at 401, and it held that the analysis would "be materially incomplete without further evidence, particularly the

testimony of the two tipsters," *id.* at 405. *Burger* approved *Flores* because there "all questions of fact were undisputed," *id.* at 404, and it left *O'Dwyer* standing because *O'Dwyer* "does not contain any reference to testimony that would shed light on the context of these communications, and such context appears to have been agreed," *id.* at 405. The agreed context there included *O'Dwyer*'s "documented history of using coarse and hyperbolic language." *Id.* No comparable history is pleaded here, and it is the government's burden to plead the context on which a threat charge depends.

Nothing here waits on testimony. There is no dispute between role-play and reality, and no context to be developed beyond what the government itself has pleaded. Unlike the district court in *Burger*, this Court need resolve no disputed fact; it need only read the sentence the grand jury quoted. *Burger* does say that a threat's "lack of particularity is relevant only insofar as it tends to negate an assertion that an objectively reasonable listener would conclude that threatened violence will occur." *Id.* at 402. Ms. Fontenot accepts that limit. The lack of particularity here is total, it negates any assertion about what a reasonable listener would conclude, and the indictment pleads no listener at all.

**B. The charged sentence is not a true threat on the face of the indictment**

What the indictment supplies, and what it omits, decides the question. It supplies a date, a statute, a category of persons, a mental state, and one sentence in quotation marks. It does not say to whom the video was communicated, whether anyone in the named category saw it, or how anyone who saw it understood it. That

absence was dispositive in *Joudeh*, where the indictment charged a single online comment, "I wish someone would in alive him," and, as the court put it, "provid[ed] no further information as to where or why this comment was posted, to whom it was communicated, or who the referenced 'him' is in the comment." *Joudeh*, 2026 WL 2234671, at *1. Reading "in alive" as the government urged, as a euphemism for kill, the court still held that "no reasonable jury could consider this broad, non-detailed wish to be a threat at all, much less a true threat," and it dismissed. *Id.* at *2.

Two features of that decision govern here. First, the court measured the charged statement against the Fifth Circuit's decision in *O'Dwyer* and concluded that "[e]ven the comment in *O'Dwyer*, which was determined not to be a threat as a matter of law, is more threatening than the one alleged here." *Id.* at *5. Second, the court explained that in the few cases where a statement of that kind had survived, "there were additional statements alleged that provided threatening context." *Id.* at *2. In *Stock* the charged post described three hours spent hunting the victim with tow chains and an intention to drown him in the falls. *Id.* In *United States v. Christenson,* 653 F.3d 697 (8th Cir. 2011), the defendant had sent the same recipient a further email saying, "i would kill obama if i could." *Id.* at *3.

Most of those statements are first-person avowals of what the speaker himself would do, and each supplies a target, a method, or both. The sentence charged here supplies none of that. Measured against them, and against *O'Dwyer*, Ms. Fontenot's quote does not allege a threat within the meaning of Section 875(c).

*Joudeh* also discussed *United States v. Demeo*, No. 2:26-cr-24-SPC-DNF, 2026 WL 1077630 (M.D. Fla. Apr. 21, 2026), where the victims there were ethnic categories. But the comments in *Demeo* "were facially direct threats" in which the defendant "expresses his intent to kill, commit genocide, and slaughter various ethnic groups." *Joudeh*, 2026 WL 2234671, at *4. The indicted sentence expresses no intent for Ms. Fontenot to do anything except protect her private home with force.

### C. The indictment does not allege a threat directed to a particular individual or group of individuals

*Black* did not define a true threat merely as a serious expression of an intent to commit violence. It was more specific. The expression must be of an intent to commit an act of unlawful violence "to a particular individual or group of individuals," and intimidation of the constitutionally proscribed kind is speech where "a speaker directs a threat to a person or group of persons" with the intent of placing "the victim in fear of bodily harm or death." 538 U.S. at 359-60. The words "particular" and "directs" are not surplusage. They require an identifiable object.

The sole quote in this indictment has none. Its only addressee is the pronoun "you," and that word has no referent anywhere inside the language the grand jury quoted. To read the sentence as a threat to anyone at all, the government must import its victim from outside the words it chose to charge. The indictment attempts to supply the missing referent by naming a category, "Immigrations and Customs Enforcement agents," Doc. 15 at 1, but a category is not a particular individual and it is not a determinate group. The pronoun problem in *Joudeh* was the same one, and

the court treated the indictment's failure to say "who the referenced 'him' is" as part of what made the pleading deficient. *Joudeh,* 2026 WL 2234671, at *1.

*O'Dwyer* is the closest Fifth Circuit case, and the communication there was considerably closer to a true threat than this one. The defendant, a bankruptcy debtor, emailed an employee of the bankruptcy court for the Eastern District of Louisiana asking that a message be carried to the judge presiding over his case. 443 F. App'x at 19. After telling the judge he could "try" to protect "the CRIMINALS Duval, Lemelle and Dennis," and predicting that their impeachment, like Judge Porteous's, was "just a matter of time," the email arrived at the passage the grand jury charged: "Maybe my creditors would benefit from my suicide, but suppose I become 'homicidal'? Given the recent 'security breach' at 500 Poydras Street, a number of scoundrels might be at risk if I DO become homicidal." *Id.* The word homicidal describes an unlawful killing, and he attached it to the street address of the federal courthouse and to the names of federal judges. The recipient contacted the United States Marshals, and the defendant was arrested outside his home about nine hours later. *Id.* at 20.

The Fifth Circuit nonetheless affirmed the pretrial dismissal, on two of the reasons it gave, and the second controls here. The email "did not threaten bodily harm to any particular individual," because the defendant "never identified any individual whom he intended to harm" and "[t]he most he said was that 'a number of scoundrels might be at risk.'" *Id.* An email naming five people, supplying a street address, and

invoking a security breach there still identified no target, because the clause carrying the alleged threat reached only "scoundrels." What matters is not whether the communication contains names and places, but whether the threatening words themselves fasten onto a particular individual or group.

The clause carrying the alleged threat here provides less on every measure. It contains no name anywhere, not in the quoted words and not in the indictment, which pleads only a category. It warns the reader about no building except the speaker's own home, which is the one place it tells him to stay away from. And its condition is stricter, because the harm it describes follows only from the reader's own unlawful entry, while the condition in *O'Dwyer* was the speaker's own descent into a state he might reach on his own.

The Fifth Circuit's decisions on the other side of the line show the distance. In *Nformangum* the defendant left a voicemail at a United States Senator's office declaring that the Senator's Republican colleagues were "to be found and killed, be it by a bullet to the face or by the smashing of a brick in your skull," and warning that their homes and addresses were public knowledge. *Nformangum*, 2026 WL 18900, at *1. The Fifth Circuit affirmed the conviction because the statement "was specific and was neither hypothetical nor conditional," *id.* at *3 n.3, and because, as the district court found, it individually targeted the Senator. *Id.* at *2. In *Jubert* the defendant waged a monthslong campaign against a named victim, posted his work address and photographs of his children, and wrote that "none of this will stop until the casket

drops." 139 F.4th at 488-89. The indicted quote here names no victim, tracks no one, specifies no place beyond "my house," and is conditional where the voicemail in *Nformangum* was categorical.

Neither a jury's verdict nor a bill of particulars can supply what the grand jury did not charge. Whether the facts the indictment alleges fall within the reach of Section 875(c) is a question of statutory interpretation for the Court. *Panarella*, 277 F.3d at 685.

### D. Section 875(c) requires the government to identify the person of another, and the indictment identifies none

The statute supplies an independent ground for dismissal. Section 875(c) punishes the transmission of a communication containing "any threat to injure the person of another." 18 U.S.C. § 875(c). The object of the threatened injury is "the person of another," and it is an element the government must both charge and prove. The definite article marks a determinate person, one who has been identified, and "of another" ties the injury to a person other than the speaker. Congress used "any" four times in this sentence, but "any communication" and "any threat" describe the conduct while "the person of another" describes its object. Had Congress meant the object to be indefinite it would have written "any person," as it did for the threat to kidnap. To allege the element, the indictment must identify the person the defendant is said to have threatened. It is not enough to name a class to which that person might belong.

The Supreme Court has read closely similar words to require an object at which

the conduct is aimed. Construing the phrase "against the person of another," a plurality of the Court held that "[t]he phrase 'against another,' when modifying the 'use of force,' demands that the perpetrator direct his action at, or target, another individual." *Borden v. United States*, 593 U.S. 420, 429 (2021) (plurality opinion). That passage construed a different statute and drew a plurality, so it is persuasive rather than binding, but its reading of the phrase is the one Section 875(c)'s text compels.

The Fifth Circuit has not decided whether "the person of another" requires the indictment to identify a person. Decisions elsewhere have allowed Section 875(c) charges against groups to proceed, and some have said that no specific person or group need be identified. *See, e.g., United States v. Cox*, 957 F.2d 264, 266 (6th Cir. 1992); *United States v. Khan*, 937 F.3d 1042, 1049-51 (7th Cir. 2019). Neither decision binds this Court, and neither is analogous to this case. *Cox* applied an objective standard the Supreme Court has since qualified. *See Elonis*, 575 U.S. at 737-40; *Counterman*, 600 U.S. at 79. *Khan* involved at least six named target groups in a defined area and a defined window of time, which is why the recipients there were "quite clear." 937 F.3d at 1046, 1055. Nothing comparable is pleaded here. Because the indictment identifies a class of agents and no person within it, the indictment does not allege a threat to injure the person of another, and it fails to state an offense.

## V. Conclusion

For the reasons set forth above, Ms. Fontenot respectfully requests that the Court dismiss the indictment.

RESPECTFULLY SUBMITTED,

CRISTIE GAUTREAUX GIBBENS
Federal Public Defender
Middle and Western Districts of Louisiana

BY: ***s/ Dustin C. Talbot***
DUSTIN C. TALBOT
Appellate Chief

***s/ John M. Piccione***
JOHN M. PICCIONE
Assistant Federal Public Defender
102 Versailles Boulevard, Suite 816
Lafayette, Louisiana 70501

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on August 25, 2026, a copy of the foregoing was filed electronically with the Clerk of Court using the CM/ECF system. Notice of the filing will be sent by operation of the Court's electronic filing system to all counsel of record.

***s/ Dustin C. Talbot***