**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**LAKE CHARLES DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **CASE NO. 2:26-CR-00044-01** |
| **VERSUS** | **JUDGE JAMES D. CAIN, JR.** |
| **ALEX TAYLOR FONTENOT (01)** | **MAGISTRATE JUDGE LEBLANC** |

## MEMORANDUM ORDER

Before the Court is "Defendant's Motion to Dismiss the Indictment" (Doc. 35) wherein Defendant, Alex Taylor Fontenot, moves to dismiss the Indictment under the First Amendment to the United States Constitution and Rules 12(b)(1) and 12(b)(3)(B)(v) of the Federal Rules of Criminal Procedure.

## BACKGROUND

On January 30, 2026, Fontenot was charged via criminal complaint with one count of making threats in interstate commerce, in violation of 18 U.S.C. § 875(c). (Doc. 1). On that same day, Fontenot was indicted and charged by a grand jury with one count of making threats in interstate commerce, in violation of 18 U.S.C. § 875(c). (Doc. 15). The charges stem from the following post Defendant, Alex Fontenot made January 26, 2026, on Fontenot's Instagram and TikTok pages:

> Hey ICE, guess what. This message is for you. Don't come to my house if you're planning on leaving alive. I'm fucking crazy. You step foot into my house, you're leaving in a body bag. I've been waiting for the day that I get to pew-pew a tyrannical government uprising. And guess what. My dad just pew-pew'd and murdered my mom. So I have all this built up rage and anger. You come to my house you'll actually be helping me aim it in a positive direction. Don't worry. No one will get hurt. You'll be dropped like flies immediately. You won't feel a thing. The GOP had ample opportunities to

> abolish the Second Amendment before they realized that what they're doing is going to cause a revolution from the American people against the tyrannical government. So come to my house, please, I beg you. I beg you. I beg you. Cause you're not leaving. It'll actually be very therapeutic for me. My therapist did recommend that I find a hobby or a healthy outlet to release my pent-up rage and anger into. So ICE if you walk into my house, count your fucking days because you're turning into my hobby. [Inaudible] this goes out to you for helping me find my next outlet.[1]

## LAW AND ANALYSIS

Defendant maintains that the charges against her should be dismissed based on her First Amendment right to free speech and/or because the indictment fails to state an offense. Defendant argues that the charged statement was "hypothetical and conditional" and "did not threaten bodily harm to any particular individual." *United States v. O'Dwyer*, 443 F. App'x 18, 20 (5th Cir. 2011) (unpublished).

*First Amendment right to free speech*

The First Amendment provides the default rule regarding the Government's ability to regulate an individual's speech. The Amendment provides that "Congress shall make no law . . . abridging the freedom of speech." U.S. Const. Amend. I. Speech is therefore protected with the exception of a few categories often referred to as "unprotected speech." *Virginia v. Black*, 538 U.S. 343, 358 (2003). "True threats" are one such category of unprotected speech. *Id.* at 359. "True threats" are statements made by a speaker who means to "communicate a serious expression of an intent to commit an act of unlawful violence to a particular individual or group

[1] Government exhibit 1 (Manual Attachment).

of individuals." *United States v. Burger*, 170 F.4th 395, 401 (5th Cir. 2026) (citing *Black*, 538 U.S. at 359).

The analysis for determining what is and what isn't a "true threat" involves both subjective and objective components. Courts instruct that a "true threat" is one that (1) an objectively reasonable person would interpret as a "serious expression of an intent to cause a present or future harm"; and (2) one in which the "speaker was subjectively aware of [the statement's] threatening nature." *United States v. Jubert*, 139 F.4th 484, 490–91 (5th Cir. 2025) (cleaned up). The law does not require the speaker to actually intend to carry out the threat. *Burger*, 170 F.4th at 401 (citing *Black*, 538 U.S. 359–60).

*Black* provides three reasons why courts place "true threats" into the realm of unprotected speech. First, outlawing "true threats" protects individuals from the fear of violence. *Black*, 538 U.S. at 360. Second, it protects individuals from "the disruption that fear engenders." *Id.* Finally, prohibiting "true threats" protects people from the possibility that the threatened violence will occur. *Id.* (Adding that "[i]ntimidation in the constitutionally proscribable sense of the word is a type of true threat, where a speaker directs a threat to a person or group of persons with the intent of placing the victim in fear of bodily harm or death.").

Defendant remarks that the title of the video is "Don't come to my door expecting to leave freely," with the accompanying hashtags #fuckice, #abolishice,

#tyranicalgovernment, #revoution2026, and #impeachtrump.[2] Defendant also remarks that the indictment, which contains only one sentence—"[i]f you step foot onto my house, you're leaving in a body bag"[3] only identifies a category, "Immigration and Customs Enforcement agents," not an individual.

Defendant relies on *Watts v. United States*, 394 U.S. 705, 707-08 (1969) for her position that Defendant's threat was protected "political hyperbole." Noting that Section 875(c) makes it a crime to transmit in interstate or foreign commerce "any communication containing any threat to kidnap any person or any threat to injure the person of another." 18 U.S.C. § 875(c), Defendant argues that the post was not a true threat.

Additionally, Defendant contends that the word "true" in the phrase "distinguishes what is at issue from jests, 'hyperbole,' or other statements that when taken in context do not convey a real possibility that violence will follow." *Counterman v. Colorado*, 600 U.S. 66, 74 (2023). Defendant argues that the charge fails to state "unlawful violence" toward "a particular individual or group of individuals" citing *Black*, 538 at 359.

Defendant suggests that her statements were her inherent right of self-defense of her home, citing *District of Columbia v. Heller*, 554 U.S. 570, 628 (2008). She also contends that the post on social media, addressed to a federal

[2] Doc. 1-1, Affidavit, ¶ 7.
[3] Doc. 15, p. 1.

agency, was broadcast to the public rather than delivered to anyone; it had no recipient, relationship, prior contact or history between Defendant and any agent.

Defendant advises the Court that the Fifth Circuit's own test, "[i]n order to convict, a factfinder must determine that the recipient of the in-context threat reasonably feared it would be carried out." *United States, v. Myers*, 104 F.3d 76, 80 (5th Cir. 1997). Defendant argues that no reasonable listener can be identified on the pleading because the indictment names no recipient, alleges no relationship, prior contact, or earlier threat.

The Government, citing *Burger, supra*, maintains that the questions Defendant has posed regarding whether Fontenot's statement was a "true threat" must be decided by a jury. Second, the Government contends that the conditional nature of the statement does not prevent it from being a "true threat," nor does the fact that it addresses a category or persons rather than an individual. Additionally, the Government asserts that contrary to Defendant's position, the acts described in the statement are not lawful acts—rather they are a promise that if an ICE agent knocked on her door, she would kill him or her. The Government maintains that this case cannot be properly decided under Rule 12(b)(3)(B) because the indictment is sufficient as alleged, and the parties disagree as to whether Fontenot's statement is a "true threat."

Specifically, the Government argues that determining whether Defendant's statements were a "true threat" is a fact issue solely for the jury. *United States v. Daughenbaugh*, 49 F.3d 171, 173 (5th Cir. 1995); *United States v. Howell*, 719 F.2d

1258, 1260 (5th Cir. 1983). "True threats are serious expressions conveying that a speaker means to commit an act of unlawful violence." *United States v. Jubert*, 139 F.4th 484, 490 (5th Cir. 2025) (citing *Counterman v. Colorado*, 600 U.S. 66, 74 (2023)) (cleaned up); see also *Virginia v. Black*, 538 U.S. 343, 359 (2003); *Brandenburg v. Ohio*, 395 U.S. 444, 447–48 (1969) (per curiam).

Defendant posits that the Court should decide the issue on the indictment alone and notes that the grand jury indictment charged that "[i]f you step foot into my house, you're leaving in a body bag," whereas the Government's transcription attached to their opposition did not include "if" and changed the word "onto" to "into."

Defendant also challenges the Government's position that the group, ICE agents, is sufficient, and argues that this group is too broad to be a determinate group.

Defendant also faults the indictment because the charged sentence describes harm only if someone steps onto the speaker's home. In other words, Defendant interprets the charge as one that allows Defendant the right to defend her home. It appears to the Court that Defendant is arguing that as read, the indictment charges that should you make an unlawful entry, I have a right to defend myself against your unlawful intrusion. Thus, Defendant argues that the indictment does not plead a true threat.

The Government notes that the controlling question is whether a reasonable recipient would interpret the language in communication as a threat.

*Daughenbaugh*, 49 F.3d at 173–74. "[A] statement can count as such a threat based solely on its objective content." *Counterman*, 600 U.S. at 72; see also *Jubert*, 139 F.4th at 490 ("Speech is a true threat and therefore unprotected if an objectively reasonable person would interpret the speech as a serious expression of an intent to cause a present or future harm."). In determining whether a communication constitutes a "true threat," both the subjective reaction of the recipient and the context in which the communication was made are relevant to the inquiry. See *United States v. Myers*, 104 F.3d 76, 80 (5th Cir. 1997).

The Government informs the Court that it can provide ample evidence that the Defendant communicated a "true threat," and assures the Court that any reasonable person would interpret Defendant's words as a threat. See *United States v. Turner*, 960 F.2d 461, 463–64 (5th Cir. 1992) ("The plain language of the letter was sufficient to cause 'a reasonable recipient, familiar with the context of the communication, to interpret it as a threat.'").

The Government also suggests that the Court can see and listen to Fontenot's tone, cadence, and emotions on the recording and judge first-hand whether a reasonable recipient would interpret the language as a threat when conveyed in such manner.[4]

Additionally, the Government asserts that the context of the statement provides further proof of the nature of the threat indicated by the fact that she

[4] Government exhibit 1.

published it on her public Instagram account when CE agents saw an 8,000% increase in death threats against them and a more than 1,300% increase in assaults against them.[5] The Government remarks that an anonymous citizen saw and heard Defendant's video on social media, took it as a serious threat, and reported it to the authorities. "The reactions of the recipients of a threat can be useful in determining whether an objectively reasonable person would interpret a statement as a threat." *Burger*, 170 F. 4th 395, 405 (citing *Daughenbaugh*, 49 F. 3d at 173–74).

As such, the Government argues that an objectively reasonable person would interpret the statement as a "serious expression of an intent to cause a present or future harm" because a person in fact reported the threat. *Jubert*, 139 F.4th at 490–91. The Government posits that Defendant's motion would essentially be the Court resolving contested factual issues for both the objective and subjective inquiries of the "true threat" analysis, whereas a disputed factual question remains—whether the context of Fontenot's post would lead a reasonable person to believe that Fontenot was making a political jest rather than expressing a sincere intent to commit violence.

The Government informs the Court that at trial, it intends to put forth evidence outside of the statement itself to show Fontenot's subjective intent, including a recorded jail-cell conversation Defendant had with a male acquaintance.

---

[5] Press Release, U.S. Department of Homeland Security, ICE Officers Face an 8,000% Increase in Death Threats Against Them and Their Families (Jan. 26, 2026), https://www.dhs.gov/news/2026/01/26/ice-officers-face-8000-increase-death-threats-against-them-and-their-families.

During that conversation, the male chastises Defendant about what she says on social media and indicates he had previously warned her about making these types of posts.[6]

While Defendant argues that the post is not directed toward an individual or a group, the Government notes that courts have found both conditional statements and threats to large target audiences to be "true threats." The Government relies on a recent decision that dealt with a conditional statement that goes beyond mere "political hyperbole." *United States v. Muller*, No. 25-10429, 2026 WL 737343 at *2 (5th Cir. 2026).

In *Muller,* a disgruntled citizen became upset with the decision to not charge Hunter Biden with what Muller believed to be viable additional crimes based on evidence on Biden's laptop. *Id.* at *1. After locating an FBI agent's phone number, the citizen called the agent and left a message threatening the FBI agency. The Fifth Circuit dismissed Muller's argument that his words did not constitute a "true threat" because they were conditional and merely expressed political dissent. *Id.* at *2. Citing *United States v. Daughenbaugh*, the Fifth Circuit ruled that Muller's words were "no constitutional shield" just because they were accompanied by political rhetoric. *Id.* (citing *Daughenbaugh*, 49 F.3d 171, 174 (5th Cir. 1995)).

The Government argues that Defendant's verbal statement goes beyond political hyperbole, noting that her tone was sinister and malicious. As such, the

[6] Government exhibit 2.

Government maintains that Defendant's speech cannot be protected by the First Amendment.

To buttress its position, the Government refers the Court to *United States v. Perez*, 43 F.4th 437, 443–44 (5th Cir. 2022)). *Perez* dealt with a defendant who was convicted under the terrorist-hoax statute after posting on Facebook that his cousin who had COVID-19 licked everything at a grocery store. *United States v. Perez*, 43 F.4th 437 (5th Cir. 2022). The Court applied a "true threat" analysis when confronted with the defendant's First Amendment as-applied constitutional challenge. Recognizing that "true threats" are an exception to the First Amendment's free-speech protections, the Fifth Circuit found the defendant's statements to be "true threats." *Id.* at 444. The Court ruled that the defendant was not saved by the fact "that his posts did not name 'a particular individual or group of individuals.'" *Id.* (citing *Black*, 538 U.S. at 359). The main goal of criminalizing "true threats" is to protect individuals from the fear of violence, from the disruption that fear engenders, and from the possibility that the threatened violence will occur. *Id.* at 443–44. With this in mind, the Court found that "[n]one of [these] factors turns on whether a speaker names individuals or merely places them where those individuals are likely to be." *Id.* at 444.

Here, as noted by the Government, the target group is much narrower—ICE agents. The Government remarks that ICE agents have a number of lawful reasons that would allow them to approach or even enter Defendant's home, such as through

a valid warrant, a knock-and-talk without a warrant, an arrest warrant, and warrantless searches.

The Court finds the Government's arguments persuasive with regard to whether or not Defendant's statements published on TikTok and Instagram were a true threat meant to communicate a serious expression of an intent to commit an act of unlawful violence to a particular individual or group of individuals.

*Does the indictment fail to state an offense?*

The essential elements of an § 875(c) charge are (1) that the defendant knowingly transmitted a communication in interstate or foreign commerce; (2) that the defendant subjectively intended the communication as a threat; and (3) that the content of the communication contained a true threat to kidnap or injure. *United States v. Elonis*, 575 U.S. 723 (2015); *United States v. Morales*, 272 F.3d 284 (5th Cir. 2001).

Under Fifth Circuit precedent, an indictment is to be liberally construed as sufficient, "unless it is so defective that by any reasonable construction, it fails to charge an offense for which the defendant is convicted." *United States v. Alford*, 999 F.2d 818, 823 (5th Cir. 1993).

Defendant maintains that the indictment fails to state an offense because it lacks particularity and negates any assertion about what a reasonable listener would conclude, noting that the indictment pleads no listener. The Court disagrees and finds that the indictment, as charged, satisfies the element of the offense.

For the reasons explained above,

**IT IS ORDERED** that Defendant's Motion to Dismiss the Indictment" (Doc. 35) is **DENIED.**

**THUS DONE AND SIGNED** in chambers on this 29th day of September, 2026.

**JAMES D. CAIN, JR.**
**UNITED STATES DISTRICT JUDGE**